IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
February 14, 2018 Session

## STATE OF TENNESSEE v. WILLIAM SHANNON GRESHAM

Appeal from the Criminal Court for Sumner County
No. 269-2013, 420-2015    Dee David Gay, Judge

_____

### No. M2017-00672-CCA-R3-CD

_____

Defendant, William Shannon Gresham, was indicted by the Sumner County Grand Jury for one count of especially aggravated sexual exploitation of a minor, two counts of rape of a child, and two counts of aggravated sexual battery. The trial court dismissed one count of rape of a child upon motion of the State at the close of the State's proof, and the trial court dismissed one count of aggravated sexual battery at the close of the defense's proof. The jury found Defendant not guilty of aggravated sexual battery, and Defendant was convicted on one count each of the lesser-included offenses of sexual exploitation of a minor and child abuse. The trial court sentenced Defendant to four years' incarceration for sexual exploitation of a minor and two years' incarceration for child abuse, to be served concurrently. Following a hearing on Defendant's "Motion for Judgment of Acquittal and/or New Trial," the trial court granted a judgment of acquittal on Defendant's sexual exploitation of a minor conviction, concluding that the photographs of the victim did not depict "lascivious exhibition" as defined in *State v. Whited*, 506 S.W.3d 416 (Tenn. 2016). In this appeal as of right, Defendant challenges the sufficiency of the evidence to sustain his conviction for child abuse and the trial court's denial of probation. Following a careful review of the record and the briefs of the parties, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and ROBERT L. HOLLOWAY, JR., JJ., joined.

Mark C. Scruggs, Nashville, Tennessee, for the appellant, William Shannon Gresham.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Lawrence Ray Whitley, District Attorney General; Tara Wyllie and Katherine Brown Walker, Assistant District Attorneys General, for the appellee, State of Tennessee.

# OPINION

## *Trial*

The victim, who will be identified by her initials K.B., was 11 years old at the time of trial. She testified that Defendant was her stepfather. She testified about an incident that happened when she was eight years old. She was visiting Defendant at the home of Defendant's mother, whom she referred to as "Gamma Lissa." K.B. testified that Defendant took video of her doing tumbling and gymnastics in the living room. Defendant instructed her to remove her clothing if she was hot. K.B. testified that she was wearing only a t-shirt and underwear and she removed both. She testified, "I guess he was still videoing me but I didn't know that." Later that night, while K.B. was in bed, Defendant began to rub her "private area." She ran out of the bedroom and "went to get in bed with [her] sister" in a different bedroom. Defendant then carried her back to her bedroom and began to rub her genitals again. K.B. was not wearing any clothes. She testified that Defendant's finger "went inside [her] body and it felt really weird." She testified that she "felt something, like, warm and wet on [her] leg." K.B. demonstrated with a doll how Defendant "was rubbing all over [her genitals] and he went inside." K.B. testified that she felt "weird and, like, it shouldn't be happening, but [she] didn't know what to do." She testified that Defendant's actions did not hurt. She told her mother about the incident when she returned home from school the following day.

K.B.'s sister, who was 13 years old at the time of trial, testified that she remembered visiting Defendant at Gamma Lissa's house. She did not remember K.B. getting in her bed with her that night. She testified, "It's hard to wake me up. I'm a really heavy sleeper."

K.B.'s mother testified that she was married to Defendant for approximately three years. They were divorced in May, 2012. She testified that her daughters were very young when she and Defendant began dating, and "[he] was their daddy." She allowed the children to continue to visit Defendant after their divorce, although there was no legal custody arrangement. In November, 2012, she picked them up from school on a Monday following a weekend they had spent with Defendant. Prompted by an incident at work involving sexual abuse against a client's daughter, she had a discussion with her daughters about inappropriate touching that afternoon. She testified, "I remember [K.B.] just went – she just went white as a sheet and she ran into me and she buried her head." K.B. told her mother that Defendant had touched her privates. K.B.'s mother asked her to demonstrate, using a pillow, what Defendant did to her. K.B. "took her fingers and she started running like this (demonstrating) on the pillow." K.B.'s mother contacted the Gallatin Police Department.

K.B.'s mother noticed changes in K.B.'s behavior since the incident. She testified that K.B. showed curiosity about sex, that she had looked up sexual terms and pornography on the computer, and that she had masturbated. She sought counseling for K.B. as a result of those behaviors.

Sue Ross, a pediatric nurse practitioner at Our Kids Center in Nashville, examined K.B. on November 14, 2012. She testified that K.B.'s physical exam was normal. Ms. Ross testified, "[i]t's unusual to see injury no matter what the allegation. It's even more unusual if we're talking solely about digital contact or penetration."

Officer Jessica Jackson, of the Gallatin Police Department, was the lead investigator in the case. Officer Jackson conducted a controlled call with K.B.'s mother and Defendant on November 9, 2012. During the controlled call, Defendant denied that he touched K.B. inappropriately. Following the controlled call, Defendant was interviewed by Investigator James Kemp. Defendant gave consent to search his phone. A search of Defendant's phone revealed one nude photo and several partially nude photos of K.B. Defendant denied touching K.B. inappropriately or carrying her back to her bed.

Defendant's mother, Melissa Shannon Gresham, testified on his behalf. She testified that she was away at a weekend retreat on the weekend that K.B. and her sister stayed with Defendant at her home. Ms. Gresham returned home on Sunday. She did not notice anything unusual about the girls' behavior. The girls went to bed at approximately 9:00 p.m. K.B. slept in a bedroom by herself, and Defendant slept in the same bedroom as K.B.'s sister.

Defendant testified that he married K.B.'s mother in 2007. He testified that he loved K.B. and her sister as if they were his children. Defendant testified that he had previously broken his right arm and shoulder and had recently undergone surgery. Defendant testified that in early November, 2012, he had "very limited range" and was unable to lift much weight with his right arm. Defendant denied that he had ever touched K.B. inappropriately. He also denied that he picked up K.B. and carried her into her bedroom because he "couldn't pick up [his] iPad, let alone a 60-pound child" because of the injury to his arm and shoulder.

### *Sentencing*

At the sentencing hearing, the presentence report was admitted into evidence without objection. The report included 28 letters written in support of Defendant's character.

Dr. Stephen Montgomery, a forensic psychiatrist at Vanderbilt University, testified as an expert for the defense. Dr. Montgomery performed a psychosexual evaluation on Defendant on July 14, 2015. Dr. Montgomery's evaluation consisted of two assessments: an Abel assessment and a Static-99 assessment. Dr. Montgomery testified that the results of Defendant's Abel assessment were "limited" and not particularly useful because Defendant "essentially den[ied] any kind of sexual interest." On the Static-99 test, Defendant scored in "the low-moderate" range for reoffending. Dr. Montgomery found that Defendant was amenable to outpatient treatment.

Several witnesses testified as character witnesses on behalf of Defendant. Phillip Boone, a childhood friend, described Defendant as an honest person and "excellent with children." Amanda Gresham, Defendant's sister-in-law, testified that Defendant is "very honest," and that her nine-year-old daughter loved him. Daniel Young, another childhood friend, testified that Defendant was "a protector . . . always looking out for everyone around him."

Defendant testified that he was willing to participate in treatment and comply with all the conditions of release. About the offense for which he was convicted, Defendant testified:

> I'm very discouraged and I am extremely sorry that I allowed myself to be in a position that things could be misconstrued and stories could be changed and the scenario for this actually happening to be possible. I'm sorry that I didn't – if I wasn't strict with the boundaries, that I was naive to this whole world. Like, it never dawned on me that I would – somebody could say something like this about me and I could be in this position.

K.B.'s mother testified as to the impact the incident had on K.B. She began taking K.B. to counseling shortly after K.B. reported the abuse. She testified that K.B. had suffered from stress-related bed-wetting, and that K.B. had woken up screaming from nightmares and slept most nights with her sister. K.B.'s mother testified about the incident: "It's changed her life. She is an abused little girl who has picked up the pieces and gone forward the best that she can, . . . ." K.B.'s mother testified,

> [T]his is the most horrific thing that we've ever been through; and that the years of counseling that we will continue to go to are going to be a very big part of our lives; and that even though this ends for most of the people here today, it does not end for my child. It's something that she deals with every day and that she will for the rest of her life.

K.B.'s statement was read aloud by the prosecutor:

> You were the only dad I really knew. I loved you and trusted you. I never even thought about any kind of abuse except when they would talk about it at school. Sometimes we talked about sexual abuse in guidance, but I didn't understand what you were doing. I just knew it was wrong. . . . I was afraid if I kept visiting you that you would keep touching me and abusing me, but I was afraid if I told, you would hurt me or my mom.

> The day after I told my mom, you showed up at school to get me. My mom came and you chased our car in the parking lot. I was so scared that I passed out. I want everybody here to know that I think you should go to jail for the full eight years.

> [Defendant] sexually abused me more than just what I got to talk about in the trial, but I couldn't talk about those times because they happened at a cabin in a different county.

> You deserve to go to prison for the full eight years because what you did was wrong and no child should have to go through that. I wanted you to hear these things from me but I was too nervous to face you and your family again.

At the conclusion of the sentencing hearing, the trial court stated that it had considered the evidence presented at trial, the sentencing hearing, and the presentence report. The trial court stated it had considered and "read through every one of" the letters and exhibits filed with the court. The court also considered the nature and characteristics of the criminal conduct involved; the evidence and information offered by the parties on the mitigating and enhancement factors; the statements of Defendant; the victim's statement; and Defendant's potential for rehabilitation and treatment.

The trial court classified Defendant as a Range I standard offender convicted of one count of sexual exploitation of a minor, a Class D felony, and one count of child abuse and neglect, a Class E felony. The trial court found that enhancement factor (7), the offense involved a victim and was committed to gratify Defendant's desire for pleasure or excitement, applied "only for the child abuse" conviction. The trial court also applied enhancement factor (14), that Defendant abused a position of private trust. *See* T.C.A. § 40-35-114. The court found that Defendant's lack of a criminal history to be the only mitigating factor.

Considering the purposes and principles of the Sentencing Act, the trial court found, "[i]n my opinion, it doesn't get more serious." The court also found, "as far as I'm concerned the jury is still out on any rehabilitation in this particular case." The trial court sentenced Defendant to four years and two years, to be served concurrently.

Regarding the manner of service of Defendant's sentence, the trial court found that Defendant had "a great family[,]" "a good work ethic[,]" and "a good reputation among [his] friends." The trial court also found that Defendant had some college education, was in good health, and had no prior criminal history. The trial court found, however, that Defendant lacked credibility, noting that the psychosexual report shows that Defendant's responses were similar "to known child abusers who attempted to conceal their history of abusing a child under the age of 17."

The trial court found with regard to Defendant's child abuse conviction, "the abuse or neglect resulted from physical contact which, in my opinion, was a crime of violence. Therefore, I find that the child abuse conviction sentence of two years is not appropriate for Community Corrections." The trial court also found that confinement was necessary to avoid depreciating the seriousness of the offense. The court stated,

> So I must consider the seriousness of the crime and the deterrent effect. The seriousness of this crime involves the fact that [Defendant] was involved in sexual contact with his stepdaughter, age eight, beginning at a separate location and ending in the bedroom where he lived, and just prior to the sexual contact he took pictures and videos of her for 30 minutes. It wasn't accidental. It shows where his mind was.
>
> . . . .
>
> The deterrent effect, I can't – I can't adequately tell you what a deterrent effect is for a stepfather abusing a child when they're alone on possibly more than one occasion. We can't have a society that abuses children. The deterrent effect is outstanding.
>
> Therefore, based on the fact that I find that confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses, these sentences will be served in the state penitentiary.

*Analysis*

*Sentencing*

Defendant asserts that he should be sentenced to one year of probation for his child abuse conviction. Defendant contends that his acquittal of the sexual exploitation of a minor conviction after sentencing should be the basis for an alternative sentence on the child abuse conviction because the trial court relied on the video recordings of the partially clothed victim as evidence of Defendant's "perverted sexual intent" to commit child abuse.

In *State v. Bise,* the Tennessee Supreme Court reviewed changes in sentencing law and the impact on appellate review of sentencing decisions. 380 S.W.3d 682 (Tenn. 2012). The Tennessee Supreme Court announced that "sentences imposed by the trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" *Id*. A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)). To find an abuse of discretion, the record must be void of any substantial evidence that would support the trial court's decision. *Id*.; *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978); *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980). The reviewing court should uphold the sentence "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10. So long as the trial court sentences within the appropriate range and properly applies the purposes and principles of the Sentencing Act, its decision will be granted a presumption of reasonableness. *Id*. at 707. This standard of review also applies to "questions related to probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012).

In determining the proper sentence, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant made in the defendant's own behalf about sentencing. *See* T.C.A. § 40-35-210 (2010); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001).

A defendant shall be eligible for probation, subject to certain exceptions, if the sentence imposed on the defendant is ten years or less. T.C.A. § 40-35-303(a). A defendant is not, however, automatically entitled to probation as a matter of law. The burden is upon the defendant to show that he is a suitable candidate for probation. *Id*. § 40-35-303(b); *State v. Goode*, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997); *State v. Boggs*, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). In order to meet this burden, the defendant "must demonstrate that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" *State v. Bingham*, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995) (quoting *State v. Dykes*, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)).

There is no bright line rule for determining when a defendant should be granted probation. *Bingham*, 910 S.W.2d at 456. Every sentencing decision necessarily requires a case-by-case analysis. *Id*. Factors to be considered include the circumstances surrounding the offense, the defendant's criminal record, the defendant's social history and present condition, the need for deterrence, and the best interest of the defendant and the public. *Goode*, 956 S.W.2d at 527. Also relevant is whether a sentence of probation would unduly depreciate the seriousness of the offense. *See State v. Davis*, 940 S.W.2d 558, 559 (Tenn. 1997); *Bingham*, 910 S.W.2d at 456.

Defendant asserts that the trial court erroneously relied upon acquitted conduct in determining the length and manner of service of his sentence. Defendant contends the trial court should have reconsidered Defendant's sentence after Defendant's motion for judgment of acquittal for the sexual exploitation of a minor conviction was granted. Defendant further contends the court improperly "emphasized that the video snippets of the victim practicing her gymnastics constituted pornography and were some type of precursor to the alleged sexual contact that the Court felt happened later."

The State responds the trial court made detailed findings unique to Defendant's child abuse conviction in determining the length and manner of his sentence for that conviction. We agree with the State.

The evidence clearly supports the trial court's finding that Defendant abused a position of private trust. Defendant had been the victim's step-father, the victim identified Defendant as "Daddy," and Defendant was the "only dad [she] really knew." The trial court also found that Defendant was motivated by his desire for sexual pleasure. Defendant does not contest the trial court's application of either enhancement factor. The trial court found Defendant's lack of a criminal history to be the only applicable mitigating factor.

- 8 -

The record shows that the trial court made specific findings to support the denial of probation for Defendant's child abuse conviction that are independent of its findings regarding Defendant's sexual exploitation of a minor conviction. The trial court specifically found a need to deter family members who abuse children. Additionally, the trial court found that Defendant lacked candor and attempted to minimize his conduct, as evident in his psychosexual evaluation responses. *See State v. Zeolia*, 928 S.W.2d 457, 461 (Tenn. Crim. App. 1996) (defendant's lack of candor reflects poorly on his potential for rehabilitation).

We conclude that Defendant's sentence of two years' incarceration for his child abuse conviction is within the appropriate range, and the record shows that the sentence imposed complies with the principles and purposes of the Sentencing Act. Therefore, we will not disturb the judgment of the trial court. Defendant is not entitled to relief on this issue.

*Sufficiency of the evidence*

Defendant also contends that the evidence is insufficient to support his conviction for child abuse because there is no evidence that there was an actual, deleterious effect upon the victim's health and welfare. Defendant argues that the abuse did not adversely affect the victim's health and welfare because his act of digitally penetrating the victim did not cause the victim actual physical pain.

When the sufficiency of the evidence is challenged, the relevant question for the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *See State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). Our Supreme Court has stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility

to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977); *Farmer v. State*, 343 S.W.2d 895, 897 (Tenn. 1961)). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" *Dorantes*, 331 S.W.3d at 379 (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008) (citing *Byrge v. State*, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence and the inferences to be drawn from this evidence and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury. *Dorantes*, 331 S.W.3d at 379 (citing *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006)). This court, when considering the sufficiency of the evidence, shall not reweigh the evidence or substitute its inferences for those drawn by the trier of fact. *Id*.

Defendant was convicted of child abuse, a lesser-included offense of rape of a child. When a defendant is convicted of a lesser-included offense, the proof must be sufficient to support each and every element of the convicted offense to sustain the conviction. *State v. Parker*, 350 S.W.3d 883, 909 (Tenn. 2011). The statute for child abuse prohibits the abuse of a child under the age of eighteen if the abuse adversely affects the child's health and welfare. T.C.A. § 39-15-401(b). When the child abused is 8 years of age or less, the offense is a Class D felony. *Id*. The State must show something more than a risk of harm to a child's health and welfare. *State v. Mateyko*, 53 S.W.3d 666, 670-71 (Tenn. 2001). Before a conviction can be sustained, the State must show that the defendant's abuse "produced an actual, deleterious effect or harm upon the child's health and welfare." *Id*. at 671-72.

Taken in the light most favorable to the State, the proof at trial showed that Defendant knowingly rubbed the victim's "private area" and inserted his finger "inside"

her "private area." The victim ran away from Defendant, but Defendant carried her back to her bedroom, and again rubbed the victim's private area. Although the victim did not suffer physical injury, the evidence shows that Defendant's actions adversely affected the child's health and welfare and produced a deleterious effect on the victim. Defendant was the only father K.B. knew, and she identified him as her "Daddy." The victim testified that Defendant's touching felt "weird" and she "didn't know what to do." When the victim revealed the abuse to her mother, she "went white as a sheet" and "buried her head" into her mother. The victim's mother sought counseling for her, and she testified about behavior changes in the victim, including bed-wetting, nightmares, and curiosity about sex.

We conclude that the evidence is sufficient to sustain Defendant's conviction. Defendant is not entitled to relief on this issue.

CONCLUSION

Based on the foregoing, the judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, JUDGE